Case No. 14-1196-FL FedEx Home Delivery and Operating Division of FedEx Round Package System, Inc. Petitioner v. National Labor Relations Board Mr. Basking for the petitioner, Ms. Isbell for the respondent, and Mr. Coppes for Amicus Curiae, AFL-CIO Petitioner v. National Labor Relations Board All right. Mr. Basking, good morning.  The issue in this case is whether the FedEx home delivery contractors are independent contractors within the meaning of the National Labor Relations Act. But this issue has already been decided by this Court. The FedEx 1 case involved the same parties, the same material facts. In fact, the entire record of FedEx 1 was made a part of the record of this case at the Board, and it's in the certified list of record entries, volume after volume, of the transcripts, the exhibits, all of the facts, which the Board announced in the motion, denying the motion for reconsideration, that they had not considered, apparently neglecting to note that the exhibit, the primary exhibit in this case, the standard operating agreement, is the exhibit that was introduced in the Boston case, carrying the same exhibit number. It is, and it's cited 35 times in the Board's brief. There's really no dispute. And I think it's also worth noting not only were the facilities geographically close together, Hartford less than 100 miles from Boston facilities, but they're also temporarily close. In other words, these are back-to-back petitions. We're not dealing with something like a 2006 case and a 2016 case. The first petition was filed in late 2006, and within eight months they filed a second petition in Hartford. And it was pending all through the litigation of the Boston case, and after three years. Speaking of that, I wanted to ask you, what happened for the four years once the Board withdrew its first order, and then in September of 2014, four years later, it resurrects it? What was going on then, if there's any, I mean, on the record? Well, as to what was going on at the Board, it was just sitting as far as we could tell, no explanation. Was it a Noel Canning problem? No, I don't believe it was. It's a mystery, I think, perhaps. Well, I hate to speculate about what the votes were about running up the clock, but I won't. All we know, but it does add to the unfairness of everything that the Board has done in this situation. The parties went through three years of vigorous litigation over this very issue with the Boston situation. It went all the way up to this Court, and the panel decided the case adverse to the Board. It said they are not independent contractors, these same types of contractors. But that should have ended it for both cases, for all the cases involving this standard operating agreement. Instead, the Board dragged it out, put us back through it for seven more years. With no real explanation. And then after all was said and done, what did they do? They came out and said, we are defying this Board and saying that we still think they are employees. Now, they have this doctrine of non-acquiescence, but whatever they want to do, they can't expect you to defy your own circuits. But they can tee it up again first, in bank or cert, if they want. I mean, we're bound as a three-judge panel. Yes, and maybe that's their plan. I don't want to speculate on that either. This would be a singularly inappropriate case for that. It's been ten years. It's what gives regulation a bad name, at least as the Board is practicing it. That's for sure. I completely understand your arguments. Same name case, same facts, same legal issue. I've got that argument. The one thing I'm struggling with, so FedEx won, we won Corporate Express, where the Board had, we affirmed and applied the Board's shift from what had been the control test to this entrepreneurial opportunity test. And so, it's both Corporate Express and Corporate Express v. FedEx, and that's how the FedEx decision comes out, correct? Actually, not quite, because if you look at the Court's opinion, the Court went on to say, because there was resistance from one of the judges, saying, even if Corporate Express never happened, the result here is unchanged. Relying on C.C. Eastern and North American Van Lines, a whole series of cases that would have to be overruled. But your position is, in the majority position in FedEx, that's a pretty on-point language, on Corporate Express that was applying. I mean, Corporate Express said that the Board's shifting to focus not on control, but on the significant entrepreneurial opportunity that's right in Corporate Express as well. But in FedEx, well, the poem was out of thin air. As is the statement that we have considered all the common law factors, I'm looking at FedEx won. My question is, what happened, there's been a long history of applying the control test, and then Corporate Express made this shift. And what we said there was, we uphold as reasonable the Board's decision to focus not on the employer's control, but on the significant entrepreneurial opportunity. So it looks to me like our Circuit President applied a reasonableness test to whether we should follow, when the Board shifts the focus, oh, it's still applying the factors, but sometimes it's called the lens that we're going to look at them through, or the focus of them. We ask whether it's reasonable. And if it is, then we follow their new shift. So what I'm struggling with is, I've got that precedent to deal with as well. So does that, if I apply that part of Corporate Express, which is also my new precedent on me, I have to say, did they shift now to, are you functioning as an independent business? Is that a reasonable shift? And given that that language comes right out of, I think, United Insurance, and Corporate Express talks about functions as an entrepreneur, it tells me to figure out how that test would be unreasonable. So I'm not sure what to do with this other precedent that seems to say my first question is, is this new test they're applying in your case this time, FedEx 2, reasonable? I also have FedEx 1 to deal with. What do I do with these two competing circuit precedents? Well, the starting point is United Insurance, and it says that the Board is not entitled to any special deference on the independent contract. No, I get it, but actually, long after United Insurance, this Circuit said, we're going to ask whether it's reasonable when they shift what the lens is that they're using. I'm bound by that. Well, you're actually bound by the United Insurance Supreme Court holding, which Corporate Express is interpreting, as did FedEx 1. And so the starting point and finishing point is you should follow, with this set of facts, with this set of facts, you've got to follow the law of the Circuit on this set of facts, which has not been totally reliant on Corporate Express. It's the entire series of precedents. So there's not the ability. And then another, there's the Lancaster Symphony, which is a more recent case. Which applied FedEx 1, your ruling. Well, but not in the same way that FedEx 1 did. It actually emerged just through the factors and treated entrepreneurial opportunity as an additional factor. So I'm feeling. . . Sure, with wildly different facts. I'm not denying that. It sure seems. . . You know. . . It's about the same as everything can be, but I'm. . . But let me address. . . I understand what you're getting at. And we're trying to reserve a couple minutes for rebuttal. That the board in the independent contractor arena, having been overturned by Congress, the board does not have the right to change the legal standard. This is not a situation where the board is filling a gap in any statutory law. The Supreme Court spelled it out in United Insurance. And the notion that the board can change its focus, and that this court should, well, not apply your own previous holding on this set of facts, cannot hold up under the unique aspects of independent contractor law. And I've got circuit precedent that surprised me when I saw it, given what United Insurance had said and given the history that it justified. . . And it made the very shift that you embrace and that FedEx won't embrace, and that is let's look at entrepreneurial opportunity. The board made a big shift. And a big shift from the control test. I don't think that's indisputable. There have been control tests for case after case after case after case for decades. And then they shifted. And our only inquiry was, was that shift reasonable? And so I'm trying to figure out why I don't have to ask that same question. Maybe you would win even under their new test. We think we would. We've gone at some length in the breeze, probably more than we can go through today. But the board, you are not on a clean slate. That is my real answer, I think, in the end to your possible dilemma, which I don't think it is a dilemma. But if you were on a clean slate, then you would be looking at evaluating the board's alleged new test. But you are not. You are operating under the rules set out, and not just the final decision, but each of the subsidiary holdings, as, in fact, you pointed out in your most recent opinion in July in the Fay case, to apply the law of the circuit. And it simplifies your analysis greatly. But I will say one other thing, that under the board's new test, old test, refined test, however you want to call it, there is no previous case where the board has found a business where the contractors or the disputed individuals owned the equipment, had the ability to buy and sell routes, ability to hire drivers to substitute for themselves or to supplement their income, the ability to incorporate all of which are exercised according to this record, and to set their own times of work and breaks, and to have a contractor agreement that spells out the intent to be independent contractors. Put all those factors together under any test. The board has never found people with that description to be employees. If I could reserve the rest of my time. Sure. I assume, I think this is right, your position would be that whatever the mess we have with legal frameworks here, that FedEx One's discussion of the legal significance of those facts you just marched through would bind even under the new test the board applies. You would have to give them the same legal significance. Yes. As they said, routes, the ability to sell routes has important evidence of one or the other, and all the things they marched through. Yes. Although we strongly urge there is no reason to revisit any of this because of the binding, and this is not a prudential doctrine, the law of the circuit doctrine, statutory. And so for all those reasons, I mean, in essence, the board is simply repackaging, well, cliche, old wine, new bottles, but just don't be fooled. Do you think FedEx One had a holding as to the scope of what we look at that we need to, that what the board did here was we're only going to look at the single jurisdiction and we're not even going to look at multi-routes. We're only going to look at single routes. And there was some discussion of that in the FedEx majority, and that was a dissent reference, breadth of evidence. But what do you think FedEx One's holding was on this evidentiary scope that the board is supposed to consider whatever test it's on? Actually, I think the unanimous holding was that the system-wide evidence should have been considered, and once again was denied the opportunity to present the evidence here. It's yet another reason why the board's repackaged decision fails. So I do believe that the majority of the evidence they just didn't present. No, they weren't allowed to present. They had to make a proffer. They just wouldn't let it. And then they accused, they criticized the company for not providing enough detail because the witnesses weren't allowed to testify. It's diabolical and wrong. So if I could just reserve the remaining time for a few minutes for rebuttal. Thank you. All right. Ms. Isbell. Good morning. Good morning. May it please the Court. The board revised and clarified its test for determining who's an independent contractor and followed the prescriptions of Congress and the Supreme Court and United Insurance and considered this Court's decision in FedEx I. It determined that it would follow the common law of agency and a new independent business factor and that it would consider all those factors without giving precedent to any particular one, as the Supreme Court cautioned in United Insurance. That rule is reasonable. And under corporate express, this Court should uphold the rule. FedEx I was in fact. You really think that? You really think we can ignore FedEx I? I mean, four people voted for in-bank because it was an important issue. That was not a majority, and then you all didn't seek cert. You can make these arguments in an in-bank petition again or a cert petition, but I don't think our Court could survive if we dismiss prior panel opinions in the way you're suggesting. I don't think you would. Of course this panel cannot overrule a prior panel's decision, but FedEx I was. There's a spirit, too. There's a spirit there. Collegiality is an issue that you have to take into consideration. We don't torture prior panel opinions to get around them. But FedEx I was explicitly applying what it thought the board's test was. That majority opinion talks explicitly about the board has moved now to considering entrepreneurial activity as the preeminent factor. And the board, the reason this case took so long, one of the reasons, Judge Henderson, is because after FedEx I came out, the board realized they needed to take another look at this case, and that's what happened. The board looked at that decision and its prior decisions and decided that that was not in fact its test. The board's test, following the common law factors and United Insurance, looks at all the incidents of the business relationship without making any one of those preeminent. Corporate Express said that the board had started to look at entrepreneurial activity. In North American Van Lines, Local 777, CC Eastern, this court applied the right to control test. Those cases were never overturned. The reasoning in those cases was not overruled by the panel in Corporate Express. What Corporate Express was doing was interpreting the board's test, and it said if that test is reasonable, it will uphold it. And in this case, the board's test is reasonable. It looks at all the control factors that are set out in the restatement, plus it looks at factors that the board and this court have traditionally looked at. Do the drivers work as independent businessmen? Do they have control over important business decisions? Can they work for other companies? Those are the kinds of things the board looked at without making any of those issues overwhelming, giving it overwhelming authority. And on the facts of this case, when you look at the control FedEx has over these drivers, substantial evidence supports the board's finding that these drivers are in fact employees. This is a unilateral contract. FedEx can unilaterally reconfigure the drivers' routes at any time. What do we do with the fact that the board used a very, very narrow focus here in applying its new test, refusing even to consider the multi-route drivers? And those are, excuse me, the best evidence you've got of entrepreneurial opportunity is that you can start a single route and graduate to multi-route, and multi-route seems to be about as entrepreneurial and independent a business as you can have. But the board just said, we're not going to look at it and then we're going to say, oh, we don't see entrepreneurial opportunity, but you actually defined away powerful evidence of entrepreneurship. Well, on this record, of course, the union... In the sense that you've got to look more broadly. On this record, the union, of course, did not ask for multi-route drivers to be in the unit, and FedEx never suggested that they should be in the unit. The regional director made an explicit finding that there was not enough evidence in the record to decide whether multi-route drivers actually exercise any more entrepreneurial opportunity than single route drivers. They can hire people, but that's the only evidence we have that they make different decisions than single route drivers. It can become, apparently, with some frequency, turn into multi-route drivers, powerful evidence of entrepreneurship. Because it doesn't show... There's no evidence on this record that they have any greater opportunities for profit or loss. Remember, they can hire people to drive those trucks, but there's no indication that that increases... that they have any kind of control over business decisions that would increase their profit or loss. They can't get customers. They cannot charge... If a customer... You can't do a multi-customer discount or multi-use discount, give a different rate to your shippees because they're using your trucks. You can't do that under FedEx. FedEx controls the entire system. The contracts are still set by FedEx. You still show up at FedEx's terminal, use FedEx's package handlers to get your packages ready to put on the truck. You still have to deliver Tuesday through Saturday. All those factors still apply to the multi-route drivers. And all these factors were considered by a prior panel, and they added all the factors up. And it's mixed here. They said you say some point one way, some point another way. They added them up and said the legal significance of these facts is that these folks are independent contractors. So we're probably not bound by that assessment of the exact same evidence. Because in FedEx 1, the court gave... the panel gave overwhelming priority to entrepreneurial opportunity. And the board is saying that what it will look at are all the factors and all the incidents of the business relationship. And if you don't elevate the right of the drivers to sometimes hire a helper in the holiday season because FedEx assigns them too many packages to deliver and they cannot get all the work done, if you don't elevate that and you look at all the incidents and the fact that FedEx controls every important business decision related to this contract, how much they're paid, what customers pay, how many customers they have. If their customer base grows too large, FedEx takes those customers away. You have no control over how many packages you're assigned, and if FedEx thinks you can't deliver them by 8 p.m. on that Tuesday, FedEx unilaterally reassigns them. You have no opportunity to work smarter, not harder, under these contracts. I see I am currently out of time. All right. Thank you. Mr. Coppice. May it please the Court. I think the fair reading of this Court's prior decision in FedEx is that it placed overwhelming weight on the opportunity the drivers had to assume multiple routes and change themselves into a different relationship with the company, and that the back-and-forth between the majority and the dissent was all over the controlling weight given to the so-called entrepreneurial opportunity that the drivers had to evolve into that new relationship. In this case, the Board explained that that's not what it meant by focusing on entrepreneurial opportunity. It didn't mean an opportunity to go into business. It meant are you currently rendering services as a business, and you look at the opportunities within that relationship to determine whether the person in question is operating as their own business or operating within the business of the employer. And the Board has now clarified that and done so in a reasonable way. Indeed, the whole focus of our brief is to try and show that what the Board did here is well within the common law definition of master-servant relationship, going way back to the second restatement, but also expressly addressed in the new restatement of employment law, which actually criticizes this Court's decision in FedEx and counterposes it to Corporate Express' misapplying the common law. Can we go back to the control test? No. I mean, they're saying that the determinative factor is how are the services being rendered, not can someone change into a new relationship. It cites Corporate Express as looking at the present relationship. Are the services being rendered as part of an independent business? Is the person functioning as an independent contractor? As opposed to FedEx, which puts a lot of weight on the possibility to change the relationship and go into a new one. We discuss this later in our brief. The whole focus of our brief, and indeed in Corporate Express, the test the Court applied to determine whether the Board's shift in focus was reasonable was to situate it within the common law of agency and find that within that traditional body of law, it was reasonable to not be excessively focused on physical control and to consider entrepreneurial opportunity as an important factor. And that same body of common law indicates that this elaboration is entirely reasonable, and that changes the whole nature of this case from the prior one. So I don't think you'd be doing a disservice to Federal Express in your opinion in that by reconsidering the Board's current approach to determine whether this is a reasonable elaboration. If you did, of course, feel you were bummed by it, or it would be somehow disrespectful of the panel as the ability to call for on-bond consideration, and you could do that. You know, that's happened recently, and it could happen here. Other questions? Thank you. All right, does Mr. Baskin have any time left? Mr. Baskin does not have any time left. All right, why don't you take two minutes, and I have a question to give you. If it comes out of your two minutes, I'll give you more. The question that occurs to me is how these drivers are held out to the public, and the reason I ask that is they're in a uniform, they pull up with a FedEx truck. I'm going to make this a hypothetical. If the FedEx driver breaks the screen door by pulling on it when it's locked and drops the package down, who do I sue? Well, I think there have been quite a few suits which have sued FedEx and the drivers, and they do hold themselves out. If I sue just the driver because he's pulling and pulling and pulling, and FedEx obviously doesn't know anything about that, what's going to happen? Well, this is why, and I'm not an expert on the tort circumstances, but I will say this, this is why the drivers are getting their own insurance, which is another indicator of independent contractor status. I thought that insurance was, I'm hazy on that, was that provided by FedEx or? No, the drivers are expected to get their own vehicles, own them, and the insurance. All right. I thought there was something that FedEx offered to them with respect to insurance. There are some supplemental financial arrangements to soften the issue. Do you offer them an insurance program? They don't have to take it. Do you offer them an insurance program they could use? There are offers, but they do not have to take them, as is true with many of the indicia that were cited. And so what we are talking about here. Has FedEx ever been held liable for a tort like that? I do not know the answer to that. And that does not appear in this record. It was not something that the board relied on one way or the other. But what is in this record is an attempt to relitigate. All of these interesting questions about the relationships have already been explored in extraordinary detail by the original panel. The board is really relitigating the same points while claiming that they are doing so in a refined way. And I did want to address the entrepreneurial point because there seems to be a question about where it's coming from and how it's different from control. It arose as a way of explicating the control test. It is not itself an independent element. And when one looks at the cases, it's evidence of lack of control that contractors have the entrepreneurial opportunity to get their own profit and loss, which is vividly demonstrated in this record. There are drivers in this system that have got gross income of hundreds of thousands, even millions of dollars. That's not your typical employee in a driving situation. These are small businesses that have incorporated, many of them, that are hiring their own people, buying their own equipment, doing the routes the way they choose to do, not the way FedEx orders them to do. Their time is set in all these different ways. Not to repeat myself, but I just want you to realize these are independent small businesses that have developed over the years as FedEx has implemented this, frankly, unique system, which should be recognized by the board after all these years. And the simplest way to do that is simply to stick with your ruling in FedEx 1, but I didn't mean to stop you from asking that last question. The last point I had is if the board, instead of adopting the test it did here, had gone back and said we're supposed to be applying the common law in the agency, restatement third has come out, and its test seems to go back to control. An employee is an agent whose principle controls or has the right to control the manner and means of the agency's process. That's the restatement third of the agency's test. Well, United Insurance said common law. That's the current statement of the common law. That's the test we're going to have to go with, and applied it and then came to the employee answer rather than the independent contractor answer. What would I do with that reasonableness test from Corporate Express and applied it to that? How could I say it's unreasonable for them to go back to the very test they applied for decades? Well, because they claim they've never departed from the test. They're not allowed to depart from the test, and this court applied the agency. Nobody said they were departing in any of these cases. They said we're changing the lens and we look at these factors through. So they said we're going back to the control lens, and control will have the same preeminent weight that entrepreneurial opportunity had in FedEx lens. But the board is not the test is a legal one, the set of the standard factors, and the lens is not an area where the board is given any special expertise. That's why the courts have just as much standing on this issue as opposed to other areas of administrative law. That's a fundamental difference of UnitedInsurance and each of your decisions that the board is now asking you to overrule. They're asking for a claim that they're smarter or better than you, that they are entitled to special deference. And on independent contractor issues, they're just not. So we ask you to stick with your... The premise that they're mutually come out of the sky is a wrong premise. Well, certainly, but I also didn't want to appear to be just dismissing as a hypothetical question. It went without saying because the board did not rely on a third restatement or the restatement of employment law, which is what the union has cited. Anyway, a 2015 document is not something that wasn't before the board. They didn't rely on it, so you need not detain yourselves with that very interesting question. Save it for the next time when the board will, I have no doubt, come back to you with a different set of facts, and then you'll have that different argument. Thank you. Thank you. Stand, please.
judges: Henderson, Kavanaugh, Millett